IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ROSE LORENZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:12-cv-69-H |
| | ) |
| PRIME COMMUNICATIONS, L.P., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S OBJECTION TO MEMORANDUM &
RECOMMENDATION CERTIFYING RULE 23 CLASS ACTION**

NOW COMES Defendant Prime Communications, L.P. ("Prime"), by and through counsel, and respectfully submits its objections to the *Order and Memorandum & Recommendation* filed on January 15, 2014 (Document 74) certifying this matter as a class action under Rule 23 of the Federal Rules of Civil Procedure.

**BASIS OF APPEAL**

Prime objects to the recommendation to certify Plaintiff's class action under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 et seq., as set forth in the *Order and Memorandum & Recommendation* (Document 74, p.12), as (1) new evidence has been discovered that would disqualify Rose Lorenzo as a class representative, (2) the issue of "chargebacks" is so highly individualized that a class action is not an appropriate method for investigation or resolution of those claims, and (3) the evidence before this Court does not support a claim that Prime's chargeback policy violated any provision of the NCWHA.

**ARGUMENT**

As an initial matter, Prime re-alleges and reasserts its arguments against and the case law in opposition to *Plaintiff's Motion to Certify Class Pursuant to Rule 23* as set out in its *Brief in Opposition to Plaintiff's Motion to Certify Class Pursuant to Rule 23 F.R.Civ.P.* (Document 53)

**I.     LORENZO SHOULD BE DISQUALIFIED AS A CLASS REPRESENTATIVE**

Prime previously filed a *Motion and Demand for Arbitration* (Document 45) that was denied by this Court. In the *Memorandum and Recommendation* denying that motion, Magistrate Judge Swank concluded that the parties did not agree to the arbitration provision because "there is simply no evidence before the court that Lorenzo agreed to the arbitration provision." (Document 60, p. 4)  At the time of the motion, Prime was unable to locate a signed acknowledgment showing that Lorenzo had been provided the Employee Handbook and had agreed to be bound by its terms, including the arbitration provision. Prime has been diligently searching for the signed acknowledgement page, as it was certain Lorenzo had been provided the Employee Handbook. Having subsequently located the signed acknowledgment by Lorenzo, Prime has requested that this court reconsider its prior ruling and reexamine the demand for arbitration. (*See Motion for Reconsideration,* Document 77)  If this Court were to reconsider and ultimately grant Prime's *Motion and Demand for Arbitration* in light of this new evidence, this Court should also reverse the decision to certify the Rule 23 class action on the grounds that Lorenzo is no longer eligible to be a class representative since her case has been compelled to arbitration.

Additionally, Prime has located another verification page signed by Lorenzo in which she acknowledged the potential chargebacks and agreed to have these chargebacks applied to her commissions and bonuses. (*See* Document 77-3)  Therefore, Plaintiff's allegation that she did not

authorize these chargebacks or was not aware that they could be taken is misleading and not true. Therefore, based on this signed verification page, Lorenzo is not an adequate representative for any potential class as (1) she agreed to the chargebacks, (2) she had knowledge that they may occur, and (3) the situations in which chargebacks may occur was explained to her. Therefore, her knowledge and consent to these chargebacks should disqualify her as a class representative, as it is now apparent that Lorenzo differs from the class she seeks to represent, in that she can no longer claim to have been misled or had no knowledge of the details of the chargeback policy prior to employment. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506 (7th Cir. 2006)(class representatives claims failed when she knew of presence of undisclosed saccharin and bought product anyway); *Noel v. Hudd Distribution Services, Inc.,* 274 F.R.D. 187 (D.S.C. 2011)(named plaintiffs did not satisfy typicality requirement when there was disagreement on whether named plaintiffs understood lease agreements at issue); *Rose v. SLM Financial Corp.,* 254 F.R.D. 269 (W.D.N.C. 2008)(unique defenses for named plaintiff prevented class certification).

II. **A CLASS ACTION IS NOT AN APPROPRIATE MEANS FOR DETERMINING THE CHARGEBACK ISSUE.**

In recommending the certification of Plaintiff's Rule 23 class action, the Magistrate Judge determined that the Plaintiff had met the "Commonality" and "Typicality" requirements or Rule 23 by merely challenging Prime's policies and practices, without any evidence that the same practices had occurred to the alleged class. In the *Amended Complaint* (Document 15) and *Plaintiff's Memorandum in Support of Motion to Certify Class Pursuant to Rule 23 F.R.Civ.P* (Document 44), Plaintiff has challenged certain transactions that she believes were improperly "chargebacked" and not accounted for, claiming that Prime has "policies and practices" regarding these chargebacks that are illegal. When pressed for evidence of the alleged illegality of the chargebacks, Plaintiff asserts three transactions in her brief in support of class certification

that were alleged to be improperly charged against her account. Any analysis of those claimed "improper" chargeback shows that all of the chargebacks were in fact proper. (*See* Momin Affidavit, Document 53-8) Prime has shown that all chargebacks are based solely upon information given to Prime by AT&T. (*See* Applicable Portions of Deposition of Laren Whiddon, Document 53-6, p. 45) The *Order* errs as accepting the Plaintiff's factual allegations as true without considering the lack of factual merit to plaintiff's allegations as shown by Prime.

As explained by the affidavit of Shehzad Momin (Document 53-8), Plaintiff's allegations are incorrect. All that the Plaintiff's evidence proves is that Lorenzo is incorrect in her determination of how commissions are determined and how chargebacks are applied.

The Commonality Prerequisite is not met because the Plaintiff's complaints are particular to her situation. Plaintiff claims that she has certain transactions that she believes were not properly credited. This is an individual complaint personal to the Plaintiff; and if true, does not involve an overall policy of Prime. The reason that Prime asserts that the allegations are unique to Lorenzo is because the issues Lorenzo complained of, (i.e. the specific transactions noted in her brief) indicate a flawed understanding of the policy, and is not an indication that the overall policy is flawed. Therefore, the situation is unique to Lorenzo and is not "common" among the purported class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)(Court of Appeals reversed District Court's certification finding that the commonality and typicality requirements were not met because the facts alleged raised the distinct possibility that a breach of contract with some class members, but not with other class members).

Plaintiff should not be able to create a class based upon false accusations and force Prime into defending a class action for an attack on a policy that is valid and reasonable. "[A]t a
320704          4

that were alleged to be improperly charged against her account. Any analysis of those claimed "improper" chargeback shows that all of the chargebacks were in fact proper. (*See* Momin Affidavit, Document 53-8) Prime has shown that all chargebacks are based solely upon information given to Prime by AT&T. (*See* Applicable Portions of Deposition of Laren Whiddon, Document 53-6, p. 45) The *Order* errs as accepting the Plaintiff's factual allegations as true without considering the lack of factual merit to plaintiff's allegations as shown by Prime.

As explained by the affidavit of Shehzad Momin (Document 53-8), Plaintiff's allegations are incorrect. All that the Plaintiff's evidence proves is that Lorenzo is incorrect in her determination of how commissions are determined and how chargebacks are applied.

The Commonality Prerequisite is not met because the Plaintiff's complaints are particular to her situation. Plaintiff claims that she has certain transactions that she believes were not properly credited. This is an individual complaint personal to the Plaintiff; and if true, does not involve an overall policy of Prime. The reason that Prime asserts that the allegations are unique to Lorenzo is because the issues Lorenzo complained of, (i.e. the specific transactions noted in her brief) indicate a flawed understanding of the policy, and is not an indication that the overall policy is flawed. Therefore, the situation is unique to Lorenzo and is not "common" among the purported class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)(Court of Appeals reversed District Court's certification finding that the commonality and typicality requirements were not met because the facts alleged raised the distinct possibility that a breach of contract with some class members, but not with other class members).

Plaintiff should not be able to create a class based upon false accusations and force Prime into defending a class action for an attack on a policy that is valid and reasonable. "[A]t a

sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998), *cert. denied,* 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). Plaintiff's claims would not "advance" the litigation, but instead would create numerous individual lawsuits, within the context of a class action, that would need to be addressed singularly and individually to determine, if in fact, any transactions were improperly refunded.

Lorenzo attempts to reach the typicality requirement by blankly stating that Prime intentionally omitted sales from employees' gross profit in order to reduce commissions, without a shred of evidence to that effect. The *Order* errs by accepting these allegations as true without any supporting evidence. The *Order* fails to acknowledge that Prime merely passes along commissions, bonuses and refunds as they are paid or deducted from AT&T and other vendors. "Prime Communications, L.P. is paid directly by carriers and 3rd party vendors for products and services sold on their behalf." (*See* Document 44-12) Therefore, if Plaintiff truly disagrees with what should be considered gross profit and/or a chargeback, the disagreement rests with AT&T, as Prime merely passes along these commissions, bonuses, and chargebacks pursuant to its contract with AT&T. Plaintiff's examples for misappropriation or improper chargebacks that she believes occurred during her employment, if true, are simply personal to her and not a system-wide dilemma that affects all employees.

The lack of commonality here is similar to *Crosby v. City of Gastonia*, 2008 WL 1944399 (W.D.N.C. 2008)[1], where the plaintiff alleged a breach of contract with the defendant, but could not prove that a breach occurred with all other class members, even though they had

---

[1] *Crosby* was ultimately determined in favor of the employer, but on grounds not relevant to the discussion here. 682 F.Supp.2d 537 (W.D.N.C. 2008), *aff'd* 635 F.3d 634 (4th Cir. 2011).

the same or similar contracts. The *Crosby* court noted, "[m]erely because … the class representative, can prove that he has a claim against the defendant does not mean that every other member of the class would have a valid claim." *Id.* at *4. While Plaintiff may be able to ultimately prove in this case that some of her transactions were improperly deducted from her Gross Profit calculation, she cannot prove that these same mistakes occurred for all employees of Prime in North Carolina. Therefore, the Typicality prerequisite is not met.

Lastly, the *Order* erred in finding that the Plaintiff satisfied the requirements of Rule 23(b)(3) for class certification when it held that the legal and factual issues common to the putative class predominated over any individual questions of law or fact. Since the overall policy of chargebacks is utilized in the industry (*See* Affidavit of Laren Whiddon, Document 53-5) and has been upheld by the courts (*see* Section III *infra*), the "common" issues of the validity of Prime's chargeback policy have yet to be refuted. Assuming *arguendo* that Prime's chargeback policy violated any provision of NCWHA, that determination would be just the beginning of the issues involved in the case. The more pressing issues (and the ones that would dominant the lawsuit going forward) would be the individual application of the chargeback policy to each employee.

Employees were provided different goals and quotas to meet each month based upon their location or past sales history (i.e. employees working in high traffic, high sales stores were given larger goals to meet before earning a commission); therefore, the issues of (a) whether a chargeback was inappropriately applied and the (b) what damages resulted, would be highly individualized. So even if Plaintiff were to prove that the chargeback provision was inappropriately applied to a class of individuals, the issues of "which transactions" and "how much" would still dominate the issues to be resolved in the case. Prime (as it has done thus far to

all of Plaintiff's allegations) would then produce an explanation proving that the chargeback was appropriately applied.

Therefore, adjudicating these issues in the context of a class action would be inconsistent, cumbersome and unduly burdensome for all parties involved and for the court to rule upon. Instead, the better avenue would be for each of the potential class members to utilize the arbitration provision in the Employee Handbook, or to simply object to commission payments at the time they are paid, if the employee feels that an error has occurred. All employees of Prime, including Lorenzo, had an opportunity to dispute any chargeback during their employment. However, Lorenzo never raised any such objection and/or complaints. Therefore, a class action is not an appropriate means to resolve this case and there are sufficient steps in place to make this dispute, even though Lorenzo has refused to utilize them. (*See* Employee Handbook, Document 53-3, pp. 23-24)

**III.    THE EVIDENCE PRESENTED DOES NOT SUPPORT CERTIFICATION.**

The *Order* also errs by failing to acknowledge that the chargeback provisions of which the Plaintiff complains are policies that have been contested and found to be legal, thereby making the certification of a class action unnecessary. The overall policy of Prime is a valid and reasonable policy that is typical in the cell phone industry. (*See* Affidavit of Laren Whiddon, Document 53-5) Plaintiff has not referenced one case in which a chargeback provision was found invalid, yet Prime noted the most applicable case on this issue in its brief: *Deleon v. Verizon Wireless, LLP,* 207 Cal.App.4th 800, 143 Cal.Rptr.3d 810, 2012. In *Deleon*, the plaintiff was employed as a retail sales representative by Verizon Wireless, and had a commission advance chargeback plan that allowed for commission advances to be charged back against the employees commissions for up to 365 days after the commissions were advanced. The plaintiff

sought class certification and complained that the commission advance plan violated the California Labor Code. The California Court of Appeals upheld summary judgment granted in favor of the employer, and found there was no wrongful withholdings made from an employee's wages. *Id.* at 812. Similar to the Prime policy, the *Deleon* written compensation plan states that commissions were not earned unless a customer did not cancel service within a determined timeframe and that any payments made were advances. *Id*. at 812. The *Deleon* court specifically noted that without the chargeback policy, sales representatives would have to wait up to a year to receive their commissions if they had to wait until contingencies on customer cancellations were satisfied.

Additionally, other courts have upheld similar chargebacks including *Steinhebel v. Los Angeles Times Communications, LLC*, 126 Cal.App.4th 696, 705, 24 Cal.Rptr.3d 351, 357 (2005)("The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable."); and *Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 48 Cal.Rptr.3d 749 (2006)(upheld a chargeback provision and concluded that commission advances are not wages.). The United States District Court for the Eastern District of New York has analyzed a similar provision of commission deductions as part of a FLSA collective action and state wage and hour law class action, and made a specific analysis of North Carolina law. In *Morangelli v. Chemed Corp.,* 922 F.Supp.2d 278 (E.D.N.Y. 2013), a class of plumbing technicians employed by Roto-Rooter branches brought a multitude of claims against their employer, claiming violations of both federal law and the law of 14 states, including North Carolina. *Id*. at 316, note 3. Roto-Rooter technicians would earn commission for services performed, but if warranty service needed to be performed

within 6 months of the date of the original service, the commission paid to the technician would be deducted from the technician's pay. The plaintiffs alleged that this compensation system violated state law prohibitions on wage deductions, while the employer contended that commissions were advances and not earned wages and that the deductions were proper and agreed to by the technicians. The court found that the commissions were advances and not earned wages, and that only deductions from earned wages were actionable, thereby granting summary judgment in favor of the employer. Id. at 297. This same analysis would apply to Prime and its commission structure.

The evidence presented here, which was not addressed in the *Order*, is that the commission structure used by Prime is not a deduction of wages earned by the employee, but instead a charge against an advance of a commission previously made to the employee. The advance is made so that an employee would not have to wait for the 180-day deactivation period to expire to receive their commission or bonus. In the *Deleon* case, the court upheld a one-year period for chargebacks, while here Prime, through its agreement with AT&T, only requires a 180-day deactivation period before commissions and/or bonuses are actually earned.

Additionally, bonuses available to Store Managers are discretionary and therefore, not earned by the Store Manager until all conditions are met. (*See* Employee Handbook, Document 53-3, p. 19) Therefore, Plaintiff's claims that the common issues amongst the potential class include whether the charge back policy violates the North Carolina Wage and Hour Act are improper. As was the case in *Morangelli,* there is no showing that the chargeback policy is a violation of the NCWHA.

Employees of Prime are well aware of the chargeback policy and when it is applied. Before beginning employment, employees are provided a Wage Deduction Authorization

Agreement (*See* Document 53-2) and a Chargeback Policy sheet that describes chargebacks in more detail. (*See* Document 44-12) On this Chargeback Policy Sheet it clearly states:

> Prime Communications, L.P. is paid directly by carriers and 3rd party vendors for products and services sold on their behalf. The agreement between these carriers and vendors is dependant upon transactions being conducted accordingly by the specified carrier or vendor policies. As such, when an employee does not follow policy, the carrier or vendor charges Prime Communications back against commissions. Because chargeback's are caused when an employee does an activity incorrectly Prime Communications will charge back against earned commission. The list below is a list of the few potential Chargeback's. Please initial the left hand box indicating that you have read and understand about potential Chargeback's in each area.

(*See* Document 44-12) The form goes on to list six different areas or examples that chargebacks can occur. Each employee, including Lorenzo, must sign this form (or its successor) prior to starting employment at Prime and Prime has provided evidence to this Court that Lorenzo in fact signed and acknowledged the commission structure. (*See* Defendant's Motion for Reconsideration, Document 77) Additionally, in regards to commissions for Solution Specialists, the Employee Handbook states, "[a]ll Commissions are subject to Carrier and Company chargebacks. Please refer to the Chargeback Policy found on ADP self-serve website under the Payday tab." (*See* Document 53-3, pg. 10) Prime considers all bonuses to Store Managers as discretionary. (*See* Document 53-3, p.19) To further explain this process, each month, the employees are provided the *Sales Compensation/Bonus Plan* that sets-out the percent of gross profit they are eligible to receive once they meet certain goals. Therefore, there are no "secret" wage deductions being made by Prime. Employees are well aware of the commission structure and are reminded of their goals on a monthly basis. Additionally, the commissions check is printed and paid separate from the employees' base wages so that, there is no co-mingling of wages and commissions, and therefore, no way an employees' earned wages can be reduced by a chargeback.

All of these factors set forth above were explained to the Magistrate Judge, but not addressed in the *Order*. The *Order* therefore ignored competent and proper evidence and incorrectly concluded that common class issues would predominate over individualized concerns. The *Order* downplays this as "factual difference … among the putative class members" when in fact the individualized fact issues are significantly greater than any common issues among the class members.

## CONCLUSION

For the reasons stated above, Prime Communications L.P.'s respectfully objections to the *Order and Memorandum & Recommendation* that grants Plaintiff's Motion to Certify this matter as a Class Action under Rule 23, and asks that this Court reverse the *Order* and find this matter is not appropriate for resolution as a class.

This the 31st day of January, 2014.

        **RAGSDALE LIGGETT, PLLC**

BY: */s/ John B. Walker*
William W. Pollock
N.C. State Bar No.: 19381
John B. Walker
N.C. State Bar No.: 35631
Post Office Box 31507
Raleigh, NC27622-1507
Email: bwalker@rl-law.com
Telephone: (919) 787-5200
Facsimile: (919) 783-8991
*Attorneys for Prime Communications, L.P.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January, 2014, I electronically filed the foregoing DEFENDANT'S OBJECTION TO MEMORANDUM & RECOMMENDATION CERTIFYING RULE 23 CLASS ACTION with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

<table>
<tr><td>

Stephen A. Dunn, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 426
Raleigh, NC 27602
Email: sdunn@emanuelanddunn.com
*Counsel for Plaintiff*

</td><td>

Harris D. Butler III, Esq.
Zev H. Antell, Esq.
BUTLER ROYALS, PLC
100 Shockoe Slip, 4th Floor
Richmond, VA 23219
Email: Harris.butler@butlerroyals.com
Email: Zev.antell@butlerroyals.com
*Counsel for Plaintiff*

</td></tr>
</table>

Raymond E. Dunn, Jr., Esq.
Charles J. Cushman, Esq.
EMANUEL & DUNN, PLLC
Post Office Box 1389
New Bern, NC 28563
Email: rdunn@emanuelanddunn.com
Email: ccushman@emanuelanddunn.com
*Counsel for Plaintiff*

                            **RAGSDALE LIGGETT, PLLC**

       BY: */s/ John B. Walker*
             John B. Walker
             N.C. State Bar No.: 35631
             Post Office Box 31507
             Raleigh, NC27622-1507
             Email: bwalker@rl-law.com
             Telephone: (919) 787-5200
             Facsimile: (919) 783-8991
             *Attorneys for Prime Communications, L.P.*