IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:12-cv-00069-H

| | | |
|---|---|---|
| ROSE LORENZO, individually and on behalf of others similarly situated, | ) ) ) | |
| | ) | PLAINTIFF'S RESPONSES TO |
| Plaintiffs, | ) | DEFENDANT'S APPEAL FROM THE |
| | ) | ORDER CERTIFYING A COLLECTIVE |
| v. | ) | CLASS AND DEFENDANT'S |
| | ) | OBJECTION TO THE MEMORANDUM |
| PRIME COMMUNICATIONS, L.P., a | ) | AND RECOMMENDATION |
| Texas General Partnership, | ) | CERTIFYING A RULE 23 CLASS |
| | ) | |
| Defendant. | ) | |

Plaintiff Rose Lorenzo ("Plaintiff" or "Lorenzo"), for herself and on behalf of all others

similarly situated, submits this response to Defendant Prime Communications, L.P. ("Prime")'s:

(i) Appeal [Doc. 82] from the Order of the Honorable Kimberly A. Swank, United States

Magistrate Judge, conditionally certifying a collective action under 29 U.S.C. § 216(b) [Doc. 74];

and

(ii) Objection [Doc. 83] to the Magistrate's Memorandum & Recommendation recommending

Class certification under Rule 23 of the Federal Rules of Civil Procedure [Doc. 74].[1]

## STATEMENT OF THE CASE

This action was commenced by Plaintiff on February 17, 2012 alleging violations of the

Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq. and the North Carolina Wage and Hour

Act (NCWHA), N.C.G.S. §§ 95-25.1 et seq. and was amended May 4, 2012, to seek relief on

---

[1] The January 15, 2014 Order and Memorandum & Recommendation [Doc. 74] (herein "Order and M&R") features both an Order granting conditional certification and facilitated notice under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and a Memorandum and Recommendation ("M&R") recommending certification of a class of North Carolina employees under Rule 23 of the Federal Rules of Civil Procedure.

behalf of class(es) of persons similarly situated. Plaintiff alleges that she and others were denied overtime wages and commissions.

### A. Overtime Wages

Plaintiff alleges entitlement, for herself and other store managers similarly situated, to overtime compensation for hours worked in excess of 40 hours in a workweek. On February 8, 2013, Plaintiff moved for conditional certification of a Fair Labor Standards Act ("FLSA" or "the Act") collective action. [Doc. 28]. On April 3, 2013, the Court denied certification, finding that although "defendant had a uniform policy of classifying its store managers as exempt from FLSA's minimum wage and overtime provisions….," it was unable to conclude upon the conflicting evidence before it "that plaintiff's job requirements were substantially similar to the requirements of the hundreds of other store managers employed by Prime." [Doc. 35 at pp. 7-8] The Court denied Plaintiff's motion without prejudice authorizing, *sua sponte*, an additional forty-five (45) days to conduct collective discovery. Id.

On June 14, 2013, following additional discovery, Plaintiffs renewed their motion for conditional certification, but, being confronted with minimal information from Prime, a deadline for certification and importantly, expiring collective claims, Plaintiffs narrowed the collective sought to those managers regularly supervising non-manager sales person(s) working a combined total of less than 80 hours in a workweek.[2] In the Order and M&R [Doc. 74] entered January 15,

---

[2] On May 30, 2013, Plaintiff filed a motion to compel discovery. [Doc. 36]. Ironically, Prime objected to Plaintiff's discovery on grounds, among others, that the Court's denial [Doc. 35] somehow precluded further discovery. Discovery issues remain unresolved. The subclass sought as a collective under Plaintiff's renewed motion was derived from, and undeniable in light of, the testimony of Prime's Vice President of Human Resources, Stephen Martin, deposed June 10, 203 in Houston, Texas. Up to two thirds of Prime's Store Managers are denied overtime wages despite the non-manger employees in their stores regularly working less than a combined 80 hours a week. *See* Pls. Memoranda in support of Renewed Motion for Facilitated Notice [Docs. 42 & 55]; 29 C.F.R. § 541.104(a); 9/1/2006 U.S. Dept. of Labor Opinion letter, (FLSA 2006-35). Prime's refusal to cooperate in discovery leaves unresolved whether the collective initially sought by Plaintiff is proper, but perhaps without remedy due to the extended time period without notice to putative plaintiffs. To address the issue of limitations which continue to run as to certain

2014, Judge Swank entered an Order granting conditional certification and facilitated notice. [Doc. 74]. On January 31, 2013, Prime appealed. [Doc. 82].

### B. Commission Wages

Relative to commissions, Plaintiff alleges that Defendant manipulates its gross profit calculations to reduce or eliminate commissions to its employees, omits sales from commission calculations, and reduces commissions payable under a complex and unlawful system of wage deductions called "chargebacks." Amended Complaint [Doc. 15], ¶¶ 17-23, 52.

On June 14, 2013, Plaintiff also moved to certify under Fed.R. Civ. Proc., Rule 23 a class of North Carolina employees who were denied commission wages by Prime, citing payroll practices used by Prime to calculate, pay and deduct commission wages that violate North Carolina's payday statute, N.C.G.S. § 95-25.6, and North Carolina's wage deduction statutes, N.C.G.S. §§ 95-25.8 and 95-25.13. [Doc. 43]. Prime opposed Plaintiff's motion advancing two arguments: (1) that its chargeback policy does not violate the NCWHA because Prime "advances" unearned commissions to its employees; and (2) that Plaintiff's claims are not representative of the class. [*See* Doc. 53].

In the Order and M&R [Doc. 74], Judge Swank found that each of four Rule 23(a) requisites had been satisfied, *i.e.* numerosity, commonality, typicality, and adequacy of representation, and further found that Plaintiff's claims were maintainable under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." [Doc. 74] at 9-11. Addressing Prime's arguments, Judge Swank wrote:

claims for putative plaintiffs, Plaintiffs have additionally filed a Motion to Toll applicable limitations resulting from delays occasioned by the process and Defendant's ordered production of relevant discovery. [Doc 62].

Although there may be certain factual differences among the individual class members, Plaintiff's allegations are not based on conduct unique to her. The putative class members' claims arise from the same course of conduct, raise common questions of law and fact (*e.g.*, whether the bonus and commission payments made by Prime were "advances" or wages within the meaning of the NCWHA; whether Prime provided its employees with notice of any wage deductions in compliance with the NCWHA; and whether Prime's payment practices resulting in the underpayment of commissions) and are based on the same legal theories (violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.8 and 95-25.13) as those of Plaintiff.

[Doc. 74] at 10. On January 31, 2014, Prime filed its objections. [Doc. 83].

## ARGUMENT

## I.    DEFENDANT'S APPEAL TO 216(b) CERTIFICATION

On January 31, 2014, Defendants filed their Appeal of Order Certifying Collective Action [Doc. 82]. Presumably, Defendant fashioned its filing as an appeal and not an objection because, unlike the recommendation concerning Rule 23 Class certification, the Order [Doc. 74] already granted conditional certification. With regard the propriety of an appeal of a Magistrate decision, "a district court reviews matters heard under <u>section 636(b)(1)(A)</u> to determine whether the "magistrate judge's order is clearly erroneous or contrary to law." *Johnson v. Honda*, 2014 U.S. Dist. LEXIS 5941 (W.D.N.C. Jan. 10, 2014). As Magistrate Judge Swank's ruling is both factually supported and on all fours with applicable law, Defendant's appeal is baseless and should be rejected in whole.

### Defendant's Appeal Fails to Note Any Legitimate Basis
### for Rejection of Magistrate Judge Swank's Order

Defendant's filing offers no new or unconsidered material[3] and amounts to little more than a rehashing of arguments already made (*See* Def's. Brief in Opp. to Pls'. Renewed Mot. For Faciliated Notice [Doc. 52], already rebutted (*See* Pls'. Reply to Def's. Opp [Doc. 55], argued at

---

[3] Save for Defendant's reference to its subsequent Arbitration filings.

length (*See* Transcript of November 21, 2013 hearing ("Transcript") [Doc. 75]), reviewed by the Court and rejected. *See* Order and M&R [Doc. 74]). Defendant's primary argument relies on two erroneous contentions. First, Defendant claims sufficient evidence has not been presented to support a conclusion that there exists a group of similarly situated Plaintiffs. As shown below, this is an indefensible position.[4] Second, Defendant claims that Ms. Lorenzo is not a member of the collective she now represents. Defendant makes this assertion based not on actual weekly hours worked, but rather on a calculated weekly average of the hours worked by Ms. Lorenzo. In drawing each conclusion, the Defendant ignores both the applicable law and the facts of this case. Both of the arguments above were addressed at length by the parties in their briefing and were presented and rejected at oral argument before Magistrate Judge Swank. That Defendant disagrees with Magistrate Judge Swank's ruling is evident, but Defendant's dissatisfaction is hardly reason to find error in a ruling well premised in the law and well supported by the facts before the Court.

### Plaintiff has Presented More than Adequate Evidence that Plaintiffs are Similarly Situated for the Purposes of 29 U.S.C. § 216(b) Certification

As a starting point, it appears that Defendant believes the Court's initial denial in April of Conditional Certification ought to control the Court's ruling here. "The *Order* acknowledges that the Plaintiff must come forth with "substantial allegations" of this single decision, but fails to make

---

[4] Plaintiffs would note for the Court that, after Plaintiffs filed their renewed conditional certification motion and briefing, the Plaintiffs' previously filed Motion to Compel was largely granted and Defendant was ordered to produce materials within twenty one days after the entry of said Order. *See* October 29, 2013 Order Granting Motion to Compel [Doc. 61]. The additional declarations and evidence obtained directly as result of that Order further support certification. However, Plaintiffs do not include said declarations herewith as they were not part of the conditional certification record and were obtained after the oral argument held on November 21, 2013. While the record of declarations and deposition testimony of Defendant's corporate representatives fully supports certification, it bears noting that Defendant relies in its appeal, in part, on its own actions in failing to disclose relevant discovery earlier in the case in support of its 'dearth of evidence' argument. In that both motions were before Magistrate Judge Swank (to certify and to compel) the Magistrate Judge was well aware of the Defendant's role in failing to timely provide discoverable materials for review of Plaintiffs' certification motions. Defendant's appeal of the Magistrate Judge's Order repeats its attempt to benefit from its failures to timely comply with the discovery mandates of the Federal Rules of Civil Procedure.

any findings to support this standard and does not find what Plaintiff did to address the deficiencies this Court noted in April." *See* [Doc. 82] at 2. The Defendant's briefing provides scant acknowledgement to the fact that Plaintiffs sought a far more confined collective on their renewed motion and that that collective was based on Defendants' *admitted business practice* of scheduling most of its managers and employees such that those managers would not regularly supervise over 80 hours of employee time a week.[5] The Plaintiffs presented the Court with deposition testimony from Prime corporate officers confirming this point. Moreover, in its briefing and at oral argument, Prime did nothing to deny the validity of this point. Yet, in its appeal, Prime somehow concludes that:

> An analysis of the facts developed during discovery **shows there is no competent evidence** to support this conclusion by the Magistrate Judge. In her renewed motion, **Plaintiff again only cites to the deficient affidavits** from herself and one other North Carolina store manager (*See Plaintiff's Memorandum of Law in Support of Renewed Motion*, Doc. 42, pp. 9-10) (emphasis added.)

[Doc. 82] at 3.

The above quote from Defendant's brief is simply wrong: Plaintiffs provided the Court with ample evidence, including evidence from Defendant's corporate representatives, for the Magistrate Judge to reach the conclusions presented in her ruling. Defendant simply chooses to ignore the other evidence presented on briefing and argued at the hearing before Magistrate Judge Swank. *See for example,* Plaintiff's Memorandum of Law in Support of Renewed Motion [Doc. 42] at 9 (wherein Plaintiffs repeatedly cite to specific deposition testimony from Defendant's Vice President of Human Resources on issues of uniform practices at Prime applicable to all putative members of this overtime collective).

---

[5] That Plaintiffs sought that lesser collective was a determination made specifically in light of the Court's previous ruling (*See* Order Denying Conditional Certification Without Prejudice [Doc. 35]) coupled with the Defendant's refusal to comply with the Court's requirement that additional discovery on these points was relevant and ordered conducted. (*See* Pls'. Mem. in Supp. Renewed Mot. Cond. Cert. [Doc 42] at 2).

In issuing her ruling, Magistrate Judge Swank made it quite clear that the above evidence was considered in assessing the viability and propriety of the proposed collective.

> Plaintiff argues that discovery provided in this case establishes that Prime inappropriately classified its Store Managers as exempt from overtime and minimum wage requirements under the FLSA's executive exemption because the managers were not "customarily and regularly direct[ing] the work of" "two full-time employees or their equivalent" as required by 29 U.S.C. § 541.104(a). (Mem. Supp. Renewed Mot. [DE #42] at 3 (quoting 29 U.S.C. § 541.104(a)).)

[Doc. 74] at 4-5.

> Plaintiff has come forth with evidence to suggest that Prime claimed all of its Store Managers exempt under the FLSA's executive exemption when approximately 60% of them were not regularly supervising subordinates for the requisite eighty hours each week.

[Doc. 74] at 5.

> [Plaintiff] relies on one policy -- Prime's exemption of its Store Managers pursuant to FLSA's executive exemption. Moreover, she seeks to include only those employed as Store Managers who did not customarily and regularly supervise the equivalent of two full-time non-managerial employees. In sum, she claims that she and these other Store Managers are "together the victims of a single decision, policy or plan" that violates the FLSA. *See Thiessen*, 267 F.3d at 1102.

[Doc. 74] at 5.

Defendant ignores the applicable standards for conditional certification and notice to the putative collective. Under Section 216(b) and the Supreme Court's guidance in *Hoffman-Laroche v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), this is a preliminary ruling, with an acknowledged relaxed standard, permitting facilitated notice to putative collective members likewise asserted to have been denied overtime compensation.[6] Defendant's argument takes a great deal of issue with the premise of the collective and contends that the evidence somehow still indicates that, *despite its admitted business practices to the contrary*, the Court

---

[6] Plaintiffs have previously filed Motion to Equitably Toll the limitations of claims by putative plaintiffs who have not been provided notice and an opportunity to opt-in to initiate claims [Doc. 62], given the lengthy challenges to the notice process.

should be guided by Defendant's protestations that managers were, in fact, regularly supervising more than 80 hours of employee time. The evidence thus far reveals no such thing. In any event, this argument may be relevant to a merits defense on the issue of damages, but it is not determinative of notice of the proposed collective, as found by Magistrate Judge Swank. Defendant's Vice President of Human Resources candidly conceded the staffing levels in its retail stores are as alleged by the Plaintiff. *See* [Doc. 42] at 3-4, 9. More importantly, *all* of this material was already introduced and considered by the Court in granting conditional certification. Disregarding the above, Defendant insists that Plaintiff[s] relies "solely on Prime's classification of a "full-time" employee" [Doc. 82] at 5. Defendant has previously made this argument and Plaintiffs response remains the same:

> Defendant's characterization of Plaintiffs' argument is purely Defendant's. In fact, the only times Plaintiffs use the term "full-time" are with respect to the requirement that an executively exempt employee supervise two full-time employees or their equivalent. Plaintiffs' certification motion does not rely on whether the Defendant calls a 20 hour,30 hour, or a 60 hour per week employee "full-time." The label itself is meaningless to the collective sought.

[Doc. 55] at 7.

Defendant's final argument in this section takes issue with the expansion of this matter beyond the confines of North Carolina. Here again, the Defendant would have the Court believe that conditional certification has been based only on two affidavits and recorded North Carolina hours (*See* [Doc. 82] at 5) – and this mischaracterizes the record on which Magistrate Judge Swank relied in granting conditional certification and notice to the putative collective. Ample evidence has already been put before the Court and this evidence is more than sufficient to support the collective sought under the applicable standards of 29 U.S.C. § 216(b).[7] Here, Defendant offers

---

[7] Plaintiffs have not relied solely on the declarations submitted; however Plaintiffs cannot simply allow Defendant's misstatement of law to go unchallenged. Declarations are exactly the type of evidence typically used and accepted at

collateral (merits) arguments, suggesting that North Carolina is purportedly a "slow market" and should not determine the hours worked in other markets. This does nothing to controvert the facts in the record or support denial of the collective sought under Section 216(b) standards. The testimony of Defendant's most senior corporate representatives, in depositions taken in this case and offered by Plaintiffs in support of the Motion for Conditional Certification, establishes that Defendant's practices are uniform in each of the twelve states in which it currently does business. That North Carolina managers may be owed more or less than their brethren in other states speaks merely to the quantum of damages owed and not the existence of the facts necessary for notice to putative collective members. The uncontested testimony that Prime's payroll practices are uniform, centrally managed from the corporate headquarters and applicable to each state in which it does business establishes the threshold 'similarly situated' requirement for notice to putative collective members, and conditional certification of the overtime collective proposed. Again, Defendant's appeal repeats arguments rejected by Magistrate Judge Swank.

## Plaintiff Lorenzo is Clearly a Member of the Collective

Throughout this case, in the initial and subsequent certification briefing as well as at oral argument, Defendant has repeatedly made the curious argument that Ms. Lorenzo is not a member of the collective because, Defendant contends, the *average* hours she worked are below 40 per week.[8] The Defendant claims the Order erred in not making specific reference to this argument in

---

the conditional certification stage. *See Ceras-Campo v. WF P'ship*, 5:10-CV-215-BO, 2011 WL 588417 *2 (E.D.N.C. Feb. 9, 2011) (*unpublished opinion attached*) ("At the first stage of the process, the court determines—usually based solely on the pleadings and any affidavits that have been submitted—whether notice of the action should be given to potential class members.") Plaintiffs in this case have gone further, have taken Rule 30(b)(6) corporate representative deposition and corporate witness depositions at Defendant's Texas home office and offer this in support of the certification motion, in addition to the declarations of opt-in plaintiffs.

[8] Defendant omits any week by week breakdown of hours worked by Lorenzo and has never provided the same to Plaintiffs despite being under an obligation to have done so in discovery and in its initial disclosures.

its Order.  *See* [Doc. 82] at 7.  As mentioned above, Defendant raised this argument in its briefing and oral argument.  The problem Defendant faces is that the argument, even if true, has no legal or factual effect.  *The FLSA is concerned with the actual hours worked on a weekly basis and not the average hours worked in a year.*  (This point, too, was not lost on the Court at oral argument, *See* Transcript [Doc. 75] at 57:15-59:10).  Further, Defendant's argument is factually incorrect. Plaintiffs note that the very document Defendant previously relied on for its averaging also lists Ms. Lorenzo as having worked 180 hours in the "overtime clocked" column. *See* Affidavit of Asslam Hussain [Doc. 52-5] at 3.

### Defendant's Arbitration Based Argument is not a Proper Basis for Appeal and has already been Submitted to the Court in Other Motions

Defendant argues that its belated apparent discovery of Ms. Lorenzo's handbook signature page renders her claims subject to arbitration.  According to Defendant, Ms. Lorenzo's handbook signature page was discovered on or about January 22, 2014, some two years after the case's February, 2012 initiation.  *See* Affidavit of B. Larkin [Doc 77-4] at ¶12.  Defendant's discovery obligations notwithstanding, it was only after the collective certification process, and after other adverse rulings, that Defendant undertook to attempt a search exhaustive enough to yield a copy of Ms. Lorenzo's handbook signature page.[9]  *See Id.*  Shortly thereafter, Defendant filed a Motion for Reconsideration and a Motion to Dismiss Certain Opt-in Plaintiffs [Docs. 78 and 80].  These filings each seek basically the same relief and request the Court move this matter into arbitration. Long ago, Ms. Lorenzo acknowledged the existence of such a page as well as having had access to the handbook (*See* July 22, 2013 Declaration of R. Lorenzo [Doc. 77-1]).  The relevance of the actual handbook acknowledgement's presentation to the issue of Defendant's earlier default of

---

[9]  The verbiage of the 2009 receipt, attached as Exh. B to Defendant's Motion For Reconsideration, is difficult to read [Doc. 77-2], but differs in content from the example of the 2011 Handbook acknowledgement provided by Defendant as Exh. B to Defendant's Motion to Dismiss Certain Opt-In Plaintiffs [Doc. 80-2].

arbitration upon its election to actively engage in substantial litigation has been briefed and is before the Court.

While Plaintiffs contend that Defendant's default on any right to compel arbitration of the claims asserted in this case is controlling, Plaintiffs additionally assert that the timing and content of Defendant's handbook acknowledgment, and failures to provide prospective employees program terms or content at the time of handbook acknowledgment, resulted in a failure to obtain knowing and voluntary waivers of the procedural and substantive rights which Defendant contends are precluded by any supposed arbitration "program." *See* Plaintiffs Omnibus Opposition to Defendant's Motions for Reconsideration and to Dismiss Certain Opt-in Plaintiff [Doc. 85].

For the purposes of this appeal, Defendant's arbitration argument is an insufficient basis to find error in the January 15 Order. Inasmuch as the Order predated the belated discovery of the acknowledgement page, it cannot be error for the Court to not have considered it in making a ruling that could only be based on the record provided by the parties. However, Plaintiff's position is that Defendant's belated efforts to compel arbitration is defeated by Defendant's active election of a judicial forum and default on any earlier right it may have had to compel arbitration. The substantive and procedural merits of Defendant's arbitration argument, or lack thereof, are only properly determined on their Motions.

## II.   DEFENDANT'S OBJECTIONS TO RULE 23 CLASS RECOMMENDATION

A party filing timely objection to a Magistrate Judge's memorandum and recommendation is entitled to *de novo* determination by the District Court Judge of "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *See also* F.R.Civ.P., Rule 72(b) ("a party may serve and file specific, written objections to the proposed findings and recommendation").  The rules contemplate a party's

objection will be specific and particularized. *Page v. Lee,* 337 F.3d 411, 416 n. 3 (4th Cir.2003).

General objections fail to satisfy the specificity requirements of Rule 72(b) and 28 U.S.C. §

636(b)(1)(C) and have the same effect as a failure to object. *Hyatt v. Town of Lake Lure,* 314

F.Supp.2d 562, 580 (W.D.N.C.2003). Issues sought to be raised by general objections that have

been addressed by the magistrate make initial reference useless as the functions of the District

Court are duplicated, wasting judicial resources and running afoul of the purposes of the

Magistrates Act. *Veney v. Astrue*, 539 F. Supp. 2d 841, 844-46 (W.D. Va. 2008).

## Prime Fails To Raise Objections Warranting *De Novo* Determination

Prime objects on grounds that: (1) they have located new evidence disqualifying Lorenzo

as class representative; (2) chargebacks are individual claims not capable of class resolution; and

(3) Prime's chargeback policy is based upon "advanced" unearned commissions and does not

violate the NCWHA. None of these "objections" qualify for *de novo* determination under of Rule

72(b) and 28 U.S.C. § 636(b)(1)(C). As shown below, these "objections" are merely renewals of

the same arguments previously made by Prime and rejected by the Magistrate Judge.

### 1. *Newly Discovered Evidence?*[10]

---

[10] By definition, newly discovered evidence that was not presented to the Magistrate Judge cannot form the basis for an objection to a memorandum and recommendation. Plaintiff is not aware of this issue having been addressed in the Fourth Circuit, but a recent court in the Eastern District of New York noted that its "[C]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation absent a compelling justification for failure to present such evidence to the magistrate judge."). *Chiari v. New York Racing Ass'n Inc.*, 12-CV-0598 SJF AKT, 2013 WL 5234242 (E.D.N.Y. Sept. 16, 2013) (*unpublished opinion attached)*. This standard, if applicable here, is similar to considering newly discovered evidence as grounds for relief from a judgment or order under F.R.Civ.P, Rule 60, permitted only upon a showing the party seeking relief could not have, in the exercise of reasonable diligence, discovered the evidence in time to present it to the Court. *Boryan v. U.S.,* 884 F.2d 767, 771-772 (1989) ("Evidence that is available to a party prior to entry of [the order], therefore, is not a basis for granting a motion for reconsideration as a matter of law"). Here, Prime does not elaborate on its diligence in searching for Lorenzo's files prior to January 22, 2014 other than to say it searched and located some of her files in a storage trailer outside of Prime's building. *See* Affidavit of C. Larkins [Document 77-4], ¶¶ 6-8. Significantly, Prime did not expand its search for files (inside its building) until January 22, 2014 when it received Consents to Join as Plaintiff's filed by Amit Kumar and Rajan Patel. Id. ¶¶ 9-11.

The newly discovered evidence alluded to by Prime is two documents. The first document is Lorenzo's Employee Handbook Acknowledgment. *See* [Doc. 77-2]. Its relevance, noted above in *Argument I, infra*, lies with Defendant's motion to reconsider [Doc. 77] its demand for Arbitration [Doc. 45]. The second document is Lorenzo's acknowledgement of receipt of Prime's "Chargeback Policy." *See* [Doc. 77-3]. Prime cites this latter document [77-3] as evidence of Lorenzo's "knowledge and consent" to chargebacks, which disqualifies her from any claim that she was "misled or had no knowledge of the details of the chargeback policy prior to employment." *See* Def's. Obj. to M&R [Doc. 83] at 3. Defendant's assertion is misplaced.

The NCWHA requires every employer, as a condition of wage deduction, to have for each pay period, (i) advance written authorization from the employee, (ii) advance written notice to the employee of the actual amount to be deducted stating the reason for the deduction, and (iii) a reasonable opportunity for the employee to withdraw the authorization in writing. N.C.G.S. § 95-25.8(a)(3); 13 N.C.A.C. § 12.0305(d). Lorenzo's knowledge or consent of Prime's chargeback policy, or any other employee's knowledge or consent of Prime's policy, is not determinative of their entitlement under North Carolina law to receive "each pay period" advance written notice of the actual amount of the wage deduction with a specific reason for the deduction, to provide "each pay period" advance written authorization for the wage deduction, and have "each pay period" a reasonable opportunity to withdraw that authorization in writing.

Moreover, this evidence is not newly discovered. Plaintiff presented Prime's Chargeback Policy as a part of her motion for class certification under Rule 23, noting its provisions in particular as substantive evidence of Prime's violation of North Carolina law. *See* Pls'. Memo in support of Motion to Certify [Doc. 44] at 4; Pls'. Reply Memo [Doc. 56] at 2. Plaintiff noted that

13

Prime's Chargeback Policy requires, as a condition of wage deduction, employee error (*i.e.* failure to follow specified carrier or vendor policy).

> Prime Communications, L.P. is paid directly by carriers and 3rd party vendors for products and services sold on their behalf. The agreement between these carriers and vendors is dependant upon transactions being conducted accordingly by the specified carrier or vendor policies. As such, when an employee does not follow policy, the carrier or vendor charges Prime Communications back against commissions. Because chargeback's [sic] are caused when an employee does an activity incorrectly, Prime Communications will charge back against earned commission. The list below is a list of the few potential Chargeback's [sic]. . . .

*See Ex. 6,* Pls'. Memo in support of Motion to Certify [Doc. 44-12]. Even if an employee's acknowledgment of receipt of this policy would suffice to fulfill an employer's requirement under North Carolina law to have "advance written authorization", and Plaintiff specifically submits it does not, it clearly does not provide "advance written notice" of the actual amount of the deduction or the specific carrier or vendor policy that the employee failed to follow, nor a reasonable opportunity to withdraw the authorization.

Prime's "unique defenses" argument is merely a different wrapper on its previously advanced argument against numerosity, commonality and typicality. *See* Def. Brief Opposing Class Cert [Doc. 53] at 5 ("Employees are made aware of these possible refunds"), at 7 ("Plaintiff was informed of the chargeback policy. . . "), at 12-15. The cases cited by Plaintiff are inapposite, and demonstrate only that certification requires alignment of both interests and claims, both of which are present here. *E.g. Oshama v. Coca-Cola Co.,* 472 F.3d 506 (7th Cir. 2006) (proof of deception as element of Illinois Consumer Fraud and Deceptive Practices Act undermined class whose membership only required purchase of a Diet Coke fountain drink from March 12, 1999 forward, because the "class could include millions who were not deceived and thus have no grievance under the [Act]"); *Noel v. Hudd Distribution Services, Inc.,* 274 F.R.D. 187 (D.S.C. 2011) (Plaintiffs suffered no "cognizable" injury under federal law requiring disclosure of charges

14

in leasing contracts where claims were based on denial of opportunity to look elsewhere for better options); *Rose v. SLM Financial Corp.,* 254 F.R.D. 269 (W.D.N.C. 2008) (certification denied where there were "numerous variations between the information and promises provided by Defendants to the proposed class of Plaintiffs). Individual issues like those identified in these cases do not arise with respect to Plaintiff's NCWHA claims *sub judice*. Deception is not an element of Plaintiffs' claims; Prime's employees suffered "cognizable" injury, *i.e.* loss of commission wages; and Prime's policy and practice relative to the calculation, payment and deduction of commission wages is uniformly applied to all Prime employees. In sum, Prime does not present any newly discovered, or unconsidered, evidence that provides a basis for sustaining its objection to the M&R.

### 2. *Prime's Chargeback Policy Is Uniform As To All Employees And Well-Suited For Class Resolution*

Prime's policies and practices with respect to the calculation, payment and deduction of commissions are uniform throughout each of the 12 states in which it conducts business. *See* Deposition of Angela Dunlap [Doc. 44-9] at 3, 7-8, Exh 2, [Doc. 42-4] at 11. Those practices violate North Carolina's payday statute, N.C.G.S. § 95-25.6, by failing to pay its employees all wages when due, and North Carolina's wage deduction statutes, N.C.G.S. §§ 95-25.8 and 95-25.13, by failing to obtain written authorization and advance written notice of intent to make wage deductions in a manner required by NCWHA. Wage deductions made in violation of the statutes are unpaid wages. N.C.G.S. § 95-25.22(a). Remedies for violation of the statute include unpaid amounts due, interest from the date each amount first came due, liquidated damages and attorneys' fees. N.C.G.S. § 95-25.22.

In its objections, Prime repeats its assertions that Plaintiff's complaints are peculiar to her and are based on a flawed understanding of Prime's policy. Def's. Obj. to M&R [Doc. 83] at 3-6;

Def's. Brief Opposing Class Cert [Doc. 53] at 11-14. Prime's argument was rejected by the Magistrate Judge. [Doc. 74] at 9-11.  Prime cites *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) as authority for denying certification on grounds that commonality and typicality requirements have not been met because "facts alleged raised the distinct possibility that a breach of contract with some class members, but not with other class members." Def's. Obj. to M&R [Doc. 83] at 4.  Prime misreads *Broussard*.  In *Broussard*, a certified class of Meineke franchisees sought damages for breach of contract, breach of fiduciary duty, negligence and unjust enrichment for Meineke's handling of advertising funds that were contractually required contributions under Meineke's franchise agreements. On appeal, following trial and a jury verdict against Defendants for $590 million, the Fourth Circuit reversed the verdict and the trial court's decision to certify the class. The panel wrote:

> The cornerstone of plaintiffs' contract case was language that appeared only in some versions of the FTA [Franchise and Trademark Agreements]. And plaintiffs' tort and statutory unfair trade practices claims prominently featured 171 taped excerpts of statements made by Meineke representatives at so-called "final review sessions" that preceded the execution of any franchise agreement . . . .

*Broussard*, 155 F.3d at 336.  The Fourth Circuit noted there were "five significant variations in franchisees' 'factual and legal arguments,' and the oral nature of the final review sessions made it 'a particularly shaky basis for a class claim.'" *Broussard*, 155 F.3d at 340-341.  Also significant to the Fourth Circuit's holding was the fact that the district court certified a class that did not allow class members to opt-out, notwithstanding there was a group of franchisees who sought unsuccessfully to intervene, and appeared *amici* on appeal, contending their relationship with Meineke and long term financial interests were not adequately represented by the class representatives.  This alienated group proposed restitution as a remedy that was rejected by the class representatives in favor of a pursuing a large damage award. The Fourth Circuit stated, "[t]he

pointed 'adversary among subgroups' of the class the district court certified, and the prejudice [certain] franchisees suffered as a result, seriously infected the class certification." *Broussard*, 155 F.3d at 340. Here, Prime has not and cannot identify any subclass of North Carolina employees whose "contractual" arrangement with Prime was different than Lorenzo's. Prime does not contend that its chargeback policy varied contractually among employees or was administered differently for Lorenzo than for others. Prime does not identify any employee or group of employees that are not adequately represented by Plaintiffs. *Broussard* is simply not factually applicable to this employment matter.[11]

Prime again asserts that Lorenzo is mistaken about the examples she presented as chargebacks that violate NCWHA, and again asserts that in all events, Prime has no responsibility to its employees because it relies exclusively on AT&T data to chargeback its employees. Def's. Obj. to M&R [Doc. 83] at 4-5; Def's. Brief Opposing Class Cert [Doc. 53] at 15 & 17. These arguments were likewise rejected by the Magistrate Judge. [Doc. 74] at 9-11; Transcript [Doc. 75] at 72-82. Moreover, Prime is simply wrong. Prime represents to its employees that it reconciles, and assumes responsibility for reconciling, RQ4 sales data against AT&T's sales data. [Doc. 44-10] at 2; [Doc. 44-11] at 9-10. Lorenzo demonstrates in her Reply brief in Support of Rule 23 Class certification, line by line, that Prime's assertions to this Court that it merely passes along

---

[11] Similarly, Prime misreads and misconstrues the District Court's analysis in *Crosby v. City of Gastonia*, 3:06cv462, 2008 WL 1944399 (W.D.N.C. May 1, 2008) (*unpublished opinion attached*). Prime reports that "plaintiff alleged a breach of contract . . . but could not prove that a breach occurred with all other class member, *even though they had the same or similar contracts*." Def's. Obj. to M&R [Doc. 83] at 6. Actually, the District Court in *Crosby* wrote, "The commonality and typicality requirements are not met in the instant case because the promises made by the defendants to the plaintiffs were not uniform. The plaintiffs do not rely on the uniform language of the Fund itself to show breach of contract. Instead, they rely on the promises that the defendant gave to each of them individually. Depending upon what promises, or lack thereof, were made . . . whether orally, in writing, or both, there may or may not be valid claims or defenses by or against that plaintiff." 2008 WL 1944399 *4. This holding is a far afield from the assertion Prime makes that implementation of the different goals and quotas it establishes for itself and its employees results in individualized claims.

chargebacks to its employees is false. Pls'. Reply Memo Supporting Rule 23 Class [Doc. 56] at 5-7. The upshot is that Prime misrepresents its reconciliation activities either to its employees or this Court, and its inability or unwillingness to address different commission outcomes between RQ4 sales data and AT&T's sales data suggests either seriously flawed reconciliation procedures or blatant manipulation. In all events, Prime cannot be heard to complain about the difficulty or burden of unraveling its creation where it has all along, as a matter of either convenience or intention, trampled the rights of its employees to wages.[12]

### 3. *Prime's Promised Commission Wages Are Not "Advanced" Unearned Commissions*

Prime again asserts that its employees' commission wages are really unearned advancements, which Prime again also contends is a customary industry practice. Def's. Obj. to M&R [Doc. 83] at 7-9; Def's. Brief Opposing Class Cert [Doc. 53] at 9-10. Prime also repeated this assertion at the hearing. Transcript [Doc. 75] at 82-87. The Magistrate Judge acknowledged Prime's argument, but recognized it as a uniform defense applicable to all class claims, and properly held "whether bonus and commission payments made by Prime were 'advances' or wages within the meaning of the NCWHA" was among the common questions of law and fact that are clearly capable of class resolution, thus supporting certification. [Doc. 74] at 10.

The M&R left unhighlighted, however, the noteworthy fact that Prime's "advancement" argument first arose in response to Plaintiff's motion to certify the Rule 23 Class. Def's. Brief Opposing Class Cert [Doc. 53] at 9-10. It was lifted from case law appearing in the California State Courts and adopted as the "same philosophy utilized by Defendant Prime." Id. at 10 (relying

---

[12] Prime now asserts "the better avenue would be for each of the potential class members to utilize the arbitration provision in the Employee Handbook, or to simply object to the commission payments at the time they are paid, if the employee feels that an error has occurred." Def's. Obj. to M&R [Doc. 83] at 7. Prime's belated arbitration demand is addressed in Plaintiff Omnibus Opposition filed February 10, 2014 [Doc. 85]. Further, Prime's insinuation that it has an open door policy on commission disputes is illusory. *See* Deposition of Rose Lorenzo [Doc 44-1] at 12, 14, 17-20.

18

upon *Deleon v. Verizon Wireless, LLC,* 207 Cal.App.4th 800, 143 Cal.Rptr.3d 810 (2012)). Not surprisingly, Prime's interpretation of the California case law completely glosses over California's recognition that employee-employer relationships are governed, in the first instance, by the terms of the parties' employment agreement. *See Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 705, 24 Cal. Rptr. 3d 351, 357 (2005) ("[T]he right of a salesman or any other person to commissions under given circumstances depends upon the terms of his contract for compensation"). And, as noted in Plaintiff's Reply Memorandum in support of Rule 23 Class Certification [Doc. 56], language supporting Prime's eleventh hour assertion of "advanced unearned commissions" appears in neither Prime's Employee Handbook and Policy Manual ([Doc. 53-3] including 10), Prime's Chargeback Policy ([Doc. 42-12] at 2), nor in Prime's Wage Deduction Authorization Agreement ([Doc. 49-4] at 4-6; also [Doc. 53-2]. **To the contrary, Prime's materials reveal that its "chargebacks" are made against "earned commission" and charged against "pay."** *See* Excerpts from Deposition of Ashley Barnette ("Barnette Dep.") Exh. 24 [Document 42-12] at 2) ("when an employee does an activity incorrectly, Prime Communications will charge back against *earned* commission" [Emphasis added]; Lorenzo Dep. p. 130, Exh. 8, Dunlap Dep. Exh. 8 [Doc. 49-4] at 4-6; also [Doc. 53-2]; Barnette Dep. pp. 89-90, Exh. 23 [Doc. 42-12] at 3) ( Prime's "180-day deactivation deduction" is charged against "pay"). Moreover, the very fact that Prime requires a "Wage Deduction Authorization" belies its assertion that commissions are unearned advancements.

Prime's cited authority for its advancements defense is not supportive. As previously noted by Plaintiff, *Deleon* is distinguishable on its face. The California Court noted that Verizon's chargeback policy was clear and unambiguous, that the language of Verizon's compensation plan clearly and expressly referred to commission payments as "advances," Verizon conducted training

19

on how the compensation plan operated, and provided monthly commission reports showing commission advances and chargeback information. 207 Cal.App.4th at 805, 810, and 813-814, 143 Cal.Rptr.3d at 813-814, 817-818, and 820-821. None of those factors are present *sub judice*. In *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 701-02, 24 Cal. Rptr. 3d 351, 354 (2005), the California Court relied upon an employee agreement that provided "Even though an order is not commissionable until the customer keeps it 28 days, The Times will pay you two weeks in advance for the order. Beginning on the second pay period after your start date, you will receive an advance against your commissions. . . . However, if the subscription is rejected . . . before 28 days, the amount advanced in respect to the rejected subscription will be deducted from your compensation payable . . . and *you hereby authorize* such deductions." In *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1334, 48 Cal. Rptr. 3d 749, 764 (2006), the commission plans stated that commissions paid at booking were not in fact earned at that time, making unnecessary incorporation of the term "advance." In *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 293 (E.D.N.Y. 2013) *reconsideration denied in part*, 10 CIV. 0876 BMC, 2013 WL 1212790 (E.D.N.Y. Mar. 25, 2013), the company policy stated that "commissions are considered advances until the invoice is paid and the warranty period expires." By way of contrast, the California court in *Deleon* Court recognized a distinction where, "the contested policy did not state that commission payments were advances, and the sales personnel appeared to earn their commission at the point of sale." 207 Cal.App.4th at 809, 143 Cal.Rptr.3d at 817. In sum, the case law cited by Prime does not support its position; rather, it highlights the fact that Prime misleads employees into believing commissions are earned at the point of sale.

Finally, Prime does not point to any statutory provision under either California or New York law that parallels North Carolina's wage deduction statute in N.C.G.S. § 95-25.8(a)(3). Prime

does not provide its employees with any document compliant under North Carolina law authorizing wage deductions, nor does it present here any applicable authority or admissible evidence of any customary industry practice justifying its payroll practices relative to commission wages or its exemption from the NCWHA.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendant's appeal, to reject Defendant's Objections to the M&R, and adopt the Order and M&R of Magistrate Judge Swank as the Order of this Court.

This 15th day of February, 2014.

*Attorneys for Plaintiff*

/s/ Stephen A. Dunn
Stephen A. Dunn NC State Bar No. 12389
sdunn@emanuelanddunn.com
EMANUEL & DUNN
Post Office Box 426
Raleigh, North Carolina 27602
(919) 832-0329 (PHONE)
(919) 832-0731 (FAX)

/s/ Harris D. Butler, III
Harris D. Butler, III, VA State Bar No. 26483
harris.butler@butlerroyals.com

/s/ Zev H. Antell
Zev H. Antell, VA State Bar No. 74634
zev.antell@butlerroyals.com
BUTLER ROYALS, PLC
140 Virginia Street, Ste. 302
Richmond, Virginia  23219
(804) 648-4848 (PHONE)
(804) 237-0413 (FAX)

21

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system which will send notification of such filing to the following:

> John Bowen Walker
> bwalker@rl-law.com
> William W. Pollock
> wpollock@rl-law.com
> RAGSDALE LIGGETT, PLLC
> Post Office Box 31507
> Raleigh, North Carolina 27622-1507

This 15th day of February, 2014.

> /s/ Stephen A. Dunn
> Stephen A. Dunn, NC State Bar No. 12389
> sdunn@emanuelanddunn.com
> EMANUEL & DUNN
> Post Office Box 426
> Raleigh, North Carolina 27602
> (919) 832-0329 (PHONE)
> (919) 832-0731 (FAX)