IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:12-CV-69-H-KS

| | |
|---|---|
| ROSE LORENZO, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | **MEMORANDUM & RECOMMENDATION** |
| PRIME COMMUNICATIONS, L.P., a Texas General Partnership, ) ) ) | |
| Defendant. ) | |

This matter is before the court on Defendant's Motion for Partial Summary Judgment [DE #205] and Plaintiffs' Motion to Accept Late Opt-in Consents [DE #209], the motions having been referred to the undersigned by Senior United States District Judge Malcolm J. Howard for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Appropriate responses and replies have been filed, and the motions are ripe for adjudication. For the reasons set forth below, it is recommended that Defendant's motion be denied and Plaintiffs' motion be granted.

## BACKGROUND

This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 *et seq.*, brought by Plaintiff Rose Lorenzo against her former employer, Prime Communications, L.P. The court previously entered orders conditionally certifying Plaintiff's FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) and certifying a Rule 23 class as to Plaintiff's state-law claims. On July 15, 2016, Defendant filed a motion for partial summary judgment as to FLSA claims asserted by twenty-nine opt-in plaintiffs. Defendant contends that seventeen individuals have released their claims

against Defendant as part of the settlement of a prior California class-action lawsuit involving wage and hour claims; ten individuals missed the court-imposed deadline for joining the suit; and two opt-in plaintiffs executed individual settlement agreements that preclude them from participating in this action. Plaintiffs filed a response in opposition to Defendant's motion, as well as a motion seeking the court's leave to accept as timely the tardily filed consent notices.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson,* 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States,* 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *Anderson,* 477 U.S. at 249.

In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, at 255. Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Id.* at 247–48. Accordingly, the court must examine "both the *materiality* and the

2

*genuineness* of the alleged fact issues" in ruling on Defendant's motion. *Faircloth,* 837 F. Supp. at 125.

## II.    California Class Action

Defendant first seeks judgment as to all plaintiffs who were employed at any of its California locations on the ground their claims are barred as the result of a class-action settlement in California. Approximately sixteen months prior to the filing of this action, a class-action suit was filed in the Superior Court of Los Angeles County, California, against a number of defendants, including Prime Communications of California, LLC ("PrimeComm")[1] and two other providers of AT&T wireless products. *See Martinez v. Prime Commc'ns of Cal., LLC*, No. BC44767 (Super. Ct. L.A. Cnty., Cal.). In April 2011, an amended complaint was filed in *Martinez* in which hourly associates and managerial employees employed by PrimeComm sought: (1) unpaid overtime compensation under California law; (2) unpaid minimum wages under California law; (3) damages under California law for failure to provide timely and accurate wage statements; (4) damages for failure to reimburse employee expenses as required by California law; (5) imposition of a constructive trust under California law; (6) relief for the unjust enrichment of PrimeComm; and (7) damages and other relief under California's Unfair Competition Law. (Pls.' Resp. Stmt. Facts, Ex. 2 [DE #208-4].) No claims were brought against PrimeComm or any of the other defendants for alleged violations of the FLSA.

---

[1] Defendant asserts that Prime Communications of California, LLC, is a subsidiary of Defendant. (Stmt. Material Facts [DE #206] at 3 ¶ 9; Aff. Audrey Pahl [DE #206-2] at 2 ¶ 5.) Plaintiffs have not produced any evidence to the contrary and the undersigned, therefore, accepts this as true for purposes of Defendant's motion for partial summary judgment.

On March 12, 2012, a settlement was reached in *Martinez* with regard to the claims asserted against PrimeComm.[2] Under the terms of the parties' Stipulation and Agreement for Settlement ("Settlement Agreement"), "[a]ny CLASS MEMBER electing not to participate as a member of the class" could opt out of the settlement "by completing and returning to the SETTLEMENT ADMINISTRATOR the Request for Exclusion form, which is part of the CLASS MEMBER CLAIM FORM . . . attached hereto as Exhibit B." (Decl. John Haubrich, Jr., Ex. B at 8 [DE #206-4 at 41].) The Class Member Claim Form was to be provided to class members, together with notice of the class settlement, and was to contain a provision submitting to the court's jurisdiction and "release language for the CLASS MEMBER to sign," as well as instructions for returning the form to the settlement administrator. (Haubrich Decl., Ex. B at 14 [DE #206-4 at 47].) Attached as Exhibit B to the Settlement Agreement filed with the California court is a Class Member Claim Form to be provided with notice of the class-action settlement. While it contains instructions for completing and returning the claim form and a release of wage-related claims against PrimeComm, it does not contain a form by which class members may request exclusion from the settlement. (Haubrich Decl., Ex. B at 14-20 [DE #206-4 at 72-78].)[3]

On May 16, 2012, an order was entered preliminarily approving the parties' settlement and defining the settlement class as follows:

---

[2] Reference is made to a second amended complaint having been filed in *Martinez* on May 4, 2011. (Decl. John Haubrich, Jr., Ex. B at 3 [DE #206-4 at 36].) That document has not been made a part of the record in this case and the court is, therefore, unaware of any differences between the claims asserted in the first and second amended complaints filed in *Martinez*.

[3] Although the court was provided with a copy of the class settlement notice approved in *Martinez*, the notice does not include a copy of the Class Member Claim Form referenced in the Settlement Agreement. Consequently, the court is unable to determine whether the notice actually provided to class members included a form by which they could request exclusion from the settlement class.

4

> Any person hired as a manager, assistant manager, or sales associate by Prime Communications of California, LLC in California between April 1, 2010 and the date preliminary approval is granted [May 16, 2012].

(Haubrich Decl., Ex. D at 2 [DE #206-4 at 101].) The order required that notice of the class settlement and a Class Member Claim Form in the form attached as Exhibit B to the Settlement Agreement be provided to class members.

On May 16, 2012, a Notice of Class Action, Proposed Class Settlement and Final Fairness and Approval Hearing ("Settlement Notice") was provided to class members. (Haubrich Decl., Ex. C [DE #206-4 at 94].) The Settlement Notice informed them they could opt out of the settlement by submitting a written request to the settlement administrator no later than June 29, 2012. (Haubrich Decl., Ex. C at 3 [DE #206-4 at 96].) Class members were further informed they could object to the settlement by filing with the court, no later than August 1, 2012, a written objection and notice of intention to appear at the final fairness hearing. Although an opt-out class, members of the class were instructed they would receive a portion of the monetary settlement only if they submitted a claim form and IRS Form W-9 by June 29, 2012.[4] Also included in the Settlement Notice was a "Release of Claims," which provided, in pertinent part, as follows:

> 2. Effective May 16, 2012, any CLASS MEMBER electing to receive a payment on behalf of himself or herself and his or her respective agents, servants, employees, partners, directors, officers, trustees, members, owners, stockholders, representatives, attorneys, and insurers, hereby fully releases and discharges [PrimeComm] . . . from and against any and all claims and causes of action, and wages and penalties . . . which he . . . now [has] or hereafter may have against [PrimeComm], known or unknown, foreseen or unforeseen, vested or contingent, choate or inchoate, including without limitation any and all claims and causes of action that were alleged or that could have been alleged, in the COMPLAINT;

---

[4] This procedure, which appears to be commonly used in California state class-action wage-and-hour suits, is typically referred to as a "claims-made settlement."

provided, however, that said limited Release shall not in any way affect the
obligations of the PARTIES set forth in this SETTLEMENT AGREEMENT.[5]

. . . .

    4.    The releases of DEFENDANT by the CLASS MEMBERS set forth herein are material to this SETTLEMENT. It is the intent of Named Plaintiffs, Subclasses, and the Defendant that the judgment entered by the Court upon final approval of the settlement shall have res judicata effect and be final and binding upon the Named Plaintiff[s] and all Class Members regarding the Released Claims, whether or not they submit Claim Statements or Completed Claim Forms or receive Settlement Payments. Accordingly, except for CLASS MEMBERS who opt out of the SETTLEMENT by timely returning Request for Exclusion forms, and regardless of whether all other CLASS MEMBERS return executed CLASS MEMBER CLAIM FORMS, by virtue of the Court's order certifying a provisional settlement class and its order granting final approval of the SETTLEMENT, any and all wage and hour claims and causes of action held by CLASS MEMBERS that were alleged in the COMPLAINT and/or any claim that could have been alleged in the COMPLAINT for wages, statutory and civil penalties, interest, attorney's fees, costs or expenses alleged to be owed to CLASS MEMBERS by DEFENDANT for their work as EMPLOYEES during the CLASS PERIOD, or any part thereof, shall be deemed to have been adjudicated, settled and satisfied by this SETTLEMENT and its approval and implementation as of the DATE OF FINAL APPROVAL.

(Haubrich Decl., Ex. C at 4-5 [DE #206-4 at 97-98].)

On August 29, 2012, judgment was entered by the Superior Court of Los Angeles County, California, giving final approval to the class-action settlement in *Martinez*. The judgment incorporated by reference the terms of the Settlement Agreement and expressly provided as follows:

    Plaintiffs and each and every Class Member who executed a Release except any Class Member who has timely excluded himself or herself from the Class . . . are permanently barred and enjoined from asserting against PrimeComm either

---

[5] The corresponding release provision contained in the Settlement Agreement is limited to "wage claims and causes of action for wages," that arose as a result of employment with PrimeComm and specifically references the FLSA. (*See* Haubrich Decl., Ex. B at 18-19 [DE #206-4 at 51-52] ("[A]ny CLASS MEMBER . . . electing to receive a payment . . . hereby fully releases and discharges [PrimeComm] . . . from and against any and all wage claims and causes of action for wages, penalties for failure to pay wages, PAGA penalties, *and wage claims or penalties under the Fair Labor Standards Act ("FLSA") . . . .*") (emphasis added).)

> directly or indirectly, individually, or in a representative capacity or on behalf of a class or the "public," any wage and hour claim or claim for resulting penalties that was alleged in this action and/or any wage and hour claim that could have been alleged in this action for wages, civil (PAGA) and statutory penalties, interest, attorney's fees, costs or expenses alleged to be owed to and [sic] of these Class Members by Defendants, or any of them, for their work as employees in California of PrimeComm during the Class Period (April 1, 2010 to May 16, 2012, which is the date preliminary approval [was] granted), or any part thereof.

(Haubrich Decl., Ex. E at 4 [DE #206-4 at 111].) The judgment further provided that the "action as to [PrimeComm] as it applies to employees of [PrimeComm] in California between April 1, 2010 and May 16, 2012, . . . is dismissed with prejudice and on the merits . . . and all Released Claims, as defined in the [Settlement Agreement], are extinguished,"[6] with the court retaining jurisdiction over the matter only for purposes of administration and enforcement of the settlement. (Haubrich Decl., Ex. E at 4 [DE #206-4 at 111-12].)

Seventeen of the opt-in plaintiffs in this case were members of the *Martinez* class who neither opted out of the settlement class nor appeared at the fairness hearing to contest the terms of the proposed settlement. Defendant invokes the judgment in *Martinez* as a bar to prosecution of their FLSA claims here under the Full Faith and Credit Act, 28 U.S.C. 1738.

"The Full Faith and Credit Act mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Thus, federal courts must give state-court judgments the same respect they would receive in the courts of the rendering state. *Id.* A federal court may not "employ [its] own rules . . . in determining the effect of state judgments." *Kremer v. Chemical*

---

[6] Although the Settlement Agreement includes three pages of definitions, "Released Claims" is not a term expressly defined in the Settlement Agreement. (*See* Haubrich Decl., Ex. B at 2-4 [DE #206-4 at 35-37].)

*Constr. Corp.,* 456 U.S. 461, 481– 482 (1982). Rather, it must "accept the rules chosen by the State from which the judgment is taken." *Id.*

In *Matsushita Elec.*, the Supreme Court employed a two-part analysis in determining whether a state-court class-action settlement releasing claims within the jurisdiction of the federal courts was entitled to preclusive effect. Where a judicially approved settlement is involved, federal courts look first to the law of the state where judgment was rendered "to ascertain the effect of the judgment. If state law indicates that the particular claim or issue would be barred from litigation in a court of that state, then the federal court must next decide whether, 'as an exception to § 1738,' it 'should refuse to give preclusive effect to [the] state court judgment.'" *Matsushita Elec.*, 516 U.S. at 375 (1996) (citation omitted) (quoting *Marrese v. Am. Academy Orthopaedic Surgeons*, 470 U.S. 373, 383 (1985)).

The initial question before this court is whether Defendant has demonstrated, as a matter of law, that the opt-in California plaintiffs would be barred from pursuing their FLSA claims in the California courts. The answer to that question requires an examination of the parameters of the *Martinez* judgment. Defendant contends that the *Martinez* judgment operated to (i) release any and all claims class members may have had against PrimeComm, including without limitation wage claims under the FLSA; and (ii) permanently enjoin class members from asserting against PrimeComm any wage and hour claim for work performed in California from April 1, 2010, through May 16, 2012.

Review of the Settlement Agreement and final judgment in *Martinez* does not support Defendant's claim that it is entitled to judgment as a matter of law as to all of the California opt-in plaintiffs. Section VI of the Settlement Agreement, concerning the release of claims, contains two provisions pertinent to the court's review. The first provision, paragraph 2, applies only to

8

class members who returned a Class Member Claim Form. (*See* Decl. John Haubrich, Jr., Ex. B at 18 [DE #206-4 at 51] ("[A]ny CLASS MEMBER . . . *electing to receive a payment on behalf of himself or herself . . . .*" (emphasis added).) Described as a "limited Release," this provision purports to release any and all wage-related claims held by these individuals against PrimeComm for the period of April 1, 2010, through May 16, 2012, and expressly includes the release of FLSA claims. (*Id.* at 18-19 [DE #206-4 at 51-52].) The second provision, captioned "Satisfaction of Claims by CLASS MEMBERS Who Do Not Return Executed CLASS MEMBER CLAIM FORMS," applies to class members who did not opt out of the settlement class but who did not receive any settlement payment either because they did not return or did not timely return a Class Member Claim Form ("absent class members"). (*See* Haubrich Decl., Ex. B at 20 [DE #206-4 at 53].) As to these absent class members, the Settlement Agreement purports to be, upon final approval by the court, a final adjudication of all wage and hour claims and causes of action against PrimeComm for work performed during the period of April 1, 2010, through May 16, 2012, whether or not alleged in the complaint.

However, unlike the release applicable to class members who submitted claims, the release provision applicable to absent class members does not expressly release FLSA claims. (*Id.*) It also appears at odds with Paragraph II(E) of the Settlement Agreement, which suggests a narrower scope of claims adjudicated by absent class members:

> Any CLASS MEMBER who fails to timely opt out of the class by following the procedure set forth in the CLASS NOTICE shall automatically be deemed to be a class participant whose rights and claims *with respect to the issues raised* in the COMPLAINT *and the subject matter of this action* shall be resolved, determined and released pursuant to this SETTLEMENT AGREEMENT and the orders of the Court granting preliminary and final approval of this SETTLEMENT.

(*See* Haubrich Decl., Ex. B at 8-9 [DE #206-4 at 41-42] (emphases added).)

9

Also of significance to the consideration of Defendant's motion is the *Martinez* judgment itself. Defendant urges the court to construe the judgment as permanently enjoining all class members "from asserting against [it] . . . ANY wage and hour claim for their work as employees in California of Prime during the class period." (Mem. Supp. Def.'s Mot. Partial Summ. J. [DE #207] at 7.) However, the final judgment entered in *Martinez* was not that broad in its scope. Rather, it "permanently barred and enjoined" suit against PrimeComm only by (i) the named plaintiffs; and (ii) those class members who executed a release and had not timely requested exclusion from the settlement class. (Haubrich Decl., Ex. E at 4 [DE #206-4 at 111] ("Plaintiffs and each and every Class Member *who executed a Release* . . . are permanently barred and enjoined from asserting against PrimeComm . . . any wage and hour claim or claim for resulting penalties that was alleged in this action and/or any wage and hour claim that could have been alleged in this action for wages, civil (PAGA) and statutory penalties, interest, attorney's fees, costs or expenses alleged to be owed . . . ." (emphasis added)).)

That the judgment operates as a dismissal with prejudice and on the merits of the "action as to [PrimeComm] . . . as it applies to employees . . . in California between April 1, 2010 and May 16, 2012" offers no support to Defendant's argument. Nor does the provision extinguishing "all Released Claims, as defined in the [Settlement Agreement]." The "action" against PrimeComm asserted only California labor claims, and "Released Claims" is not defined in the Settlement Agreement. Read as a whole, it cannot be said with any certainty that the *Martinez* judgment was intended to bar FLSA claims by absent class members.

Moreover, "courts have disapproved otherwise valid global state-law class-action releases when they include a global release of FLSA claims." *Gesselle v. Jack in the Box, Inc.*, No. 3:14-CV-1092-BR, 2016 WL 7223324 (D. Ore. Dec. 13, 2016). In *Apparicio v. Radioshack Corp.*, No.

08-CV-1145 GAF-AJWX, 2009 WL 1490560 (C.D. Cal. May 21, 2009), a case arising out of the Central District of California, the court rejected the parties' motion for preliminary approval of a class-action settlement. Among the reasons given was that the settlement purported to release all claims, state and federal, "arising out of or related to the allegations in the First Amended Complaint." *Apparicio*, 2009 WL 1490560, at *2. The *Apparicio* court explained:

> [T]he release covers "[a]ll claims, demands, rights, liabilities, and causes of action of every nature and description . . . for violation of any state or ***federal*** statute, rule or regulation, including state or ***federal*** wage and hour laws" arising out of or related to the allegations in the First Amended Complaint. However, under the federal Fair Labor Standards Act, "[n]o member of the class is either bound by the class action adjudication or barred from filing an individual claim within the limitations period ***unless he opts*** to become a party." *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) (emphasis added). Thus, a class member can only release her federal FLSA claims if she opts in, giving her consent in writing to become a party. *See* 29 U.S.C. § 216. As the settlement agreement and proposed class notice is currently drafted, putative class members who do not respond to the notice by either filing a claim form or a timely request for exclusion are deemed covered by the claims release. The FLSA will not allow this. Thus, if the parties wish to include FLSA claims within the scope of the release, they must modify the terms such that those class members who do not respond do not release any FLSA claims they may have.

*Apparicio*, 2009 WL 1490560, at *2 (record citation omitted) (alterations and ellipsis in original).

Defendant cites *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442 (5th Cir. 2016), in support of its position that the FLSA claims of the California plaintiffs involved here are barred by the court-approved settlement in *Martinez*. While *Richardson* may call into question *Apparicio's* conclusion that FLSA claims can be released in a court-approved settlement only as to plaintiffs who joined the suit, *Richardson* is factually inapposite and does not answer the question presented here – whether the *Martinez* judgment would be construed to preclude FLSA claims by absent class members.

Like the instant case, *Richardson* involved an FLSA collective action seeking overtime wages for employees who had allegedly been improperly classified as exempt. A number of the

11

defendant's employees had previously brought suit in California state court alleging violations of both California's wage and hour laws and the FLSA. Defs.' Mot. Summ. J. at 5, *In re Wells Fargo Wage & Hour Emp't. Practices Litig.*, No. 4:11-MD-2266 (S.D. Tex. filed Sept. 2, 2014) (citing *Lofton v. Wells Fargo Home Mortg.*, No. CGC-11-509502 (Super. Ct. S.F. Cnty., Cal. filed Mar. 24, 2011)). Ultimately, the parties reached a settlement of the state-court action. Following preliminary approval by the court, notice was provided to approximately 8,400 employee class members. Significantly, both the settlement agreement and the settlement notice expressly advised class members that the settlement operated as a release of "any and all applicable state and federal law wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, . . . under any and all applicable California or federal laws, statutes, regulations, and Wage Orders *including any existing under the Fair Labor Standards Act of 1938.*" *Richardson*, 839 F.3d at 445-46. Upon final approval of the settlement, the court "declared that class members 'who have not opted out of the Settlement are bound by the release.'" *Id.* at 446.

*Richardson* recognized that notice is key in these circumstances. "'The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it.'" *Richardson*, 839 F.3d at 455 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)); *see also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251–52, 110 Cal. Rptr. 2d 145, 167 (2001) ("The purpose of a class notice in the context of a settlement is to give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement."). In *Richardson*, the notice was found to be "clear and sufficient to

apprise class members that the settlement included the release of FLSA claims." *Richardson*, 839 F.3d at 455.

The Settlement Notice provided in *Martinez* made no mention of the FLSA. Rather, it advised that failure to request exclusion of the class would operate as an adjudication of "any and all wage and hour claims and causes of action . . . alleged in the COMPLAINT and/or any claim that could have been alleged in the COMPLAINT for wages, statutory and civil penalties, interest, attorney's fees, costs or expenses alleged to be owed." Given the absence of any mention of the FLSA or the waiver of federal rights or claims in both the Settlement Notice and the judgment approving the class-action settlement, the undersigned is unable to say that Defendant has met its burden of demonstrating that the *Martinez* judgment would be construed under California law to preclude the FLSA claims of all California plaintiffs involved in this action.[7] It is therefore recommended that Defendant's motion be denied in this respect.

## III. Late Opt-Ins

Defendant further requests that judgment be entered in its favor as to ten plaintiffs who failed to file their consents to join the FLSA collective action within the ninety-day deadline. Plaintiffs oppose Defendant's motion and have further filed a motion requesting leave to have the late consents deemed timely. In support of their motion, Plaintiffs assert that (i) notices to four of the ten late opt-in plaintiffs were returned undeliverable and had to be resent following additional research; (ii) one of plaintiffs who joined late was not on the original list provided by Defendant; (iii) one late opt-in plaintiff claims not to have received notice; and (iv) the remaining late consents

---

[7] The court has not been informed whether any of the California plaintiffs made a claim pursuant to the court-approved class settlement and the undersigned therefore expresses no opinion as to the release of FLSA claims by such individuals.

13

were filed six days, sixteen days, twenty-two days, and one month following the deadline. Plaintiffs further point out that none of the claims are barred by the statute of limitations.

The limitations period for FLSA overtime claims is governed by 29 U.S.C. § 255(a), which provides that such claims "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). With respect to a collective action instituted under the FLSA, the action is considered commenced as to an individual claimant

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.

The deadline to opt-in to an FLSA collective action is not prescribed by the FLSA but is instead a matter to be set by the trial court. *Regan v. City of Charleston, S.C.*, No. 2:13-CV-3046–PMD, 2015 WL 1299967, at *2 (D.S.C. Mar. 23, 2015) (citing 29 U.S.C. §§ 216(b), 255, 256). Whether potential plaintiffs should be permitted to join a collective action after the court-imposed deadline is a matter within the court's discretion. In exercising this discretion, courts should consider the following factors: "(1) whether 'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Id.* (internal quotation marks omitted) (quoting *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009)).

14

Having carefully considered the matter in light of these factors, it is the undersigned's opinion that Plaintiffs' motion for leave to accept the late consents of these ten individuals should be allowed. Good cause has been shown for the untimely filing by some of these plaintiffs, and even where a finding of good cause is not supported, consideration of the other, relevant factors weighs in favor of allowing the late submissions. The number of late filings represents a small percentage of the claims in this action, and each of the consents was submitted within a short period after the filing deadline. Their claims are not barred by the limitations period, Defendant was aware of the potential claims of these individuals, and their inclusion in the suit will not delay the proceedings. Thus, there is no indication Defendant would be prejudiced by allowing their claims to proceed. Moreover, interests of judicial economy would be best served by allowing these plaintiffs to proceed with their claims. Were the court to deny their motion to accept the late opt-in consents, the opt-in plaintiffs would be free to refile their claims in one or more separate actions. In that event, the court would face having to manage separate actions alleging identical claims or consolidating the claims with this action, resulting in substantial delays in the litigation of this matter. It is therefore recommended that the late consents be accepted as timely and Defendant's motion for judgment as to these claims be denied.

## IV.     Claims of Plaintiffs Rebecca Willoughby and Patricia White

Finally, Defendant argues it is entitled to judgment as to the FLSA claims asserted by Plaintiffs Rebecca Willoughby and Patricia White based upon individual settlement agreements signed by them. Willoughby executed a "Release Agreement" on March 26, 2012, in which Defendant agreed to pay Willoughby "certain compensation in the amount of $311.52, plus commission earned in the month of February 2012" to settle and resolve any and all claims arising out of her employment with Prime, "including all claims for unpaid wages or commissions."

(Stmt. Material Facts, Ex. A [DE #206-3] at 1.) In exchange, Willoughby agreed to release Defendant from

> any and all claims, grievances, demands, liabilities, causes of action, damages, costs and/or expenses arising out of or in connection with her employment by Prime from the beginning of time, including, but not limited to all claims . . . arising under:
>
> The Georgia Workers' Compensation laws, including the retaliation provisions thereof;
>
> Title VII of the Civil Rights Act of 1964, as amended;
>
> The Federal Age Discrimination in Employment Act, as amended;
>
> The Texas Commission on Human Rights Act, as amended;
>
> The Fair Labor Standards Act, as amended;
>
> The Family and Medical Leave Act;
>
> The Americans with Disabilities Act;
>
> The Ledbetter Act; and
>
> any and all other claims, whether arising from contract, tort or statute, whether criminal or civil, which [Willoughby] may have arising from her employment by and separation from Prime.

(*Id.* at 1-2.)

Patricia White was originally part of the *Martinez* class-action suit but opted out and initiated her own suit against Defendant in the Superior Court of Riverside County, California. *See White v. Prime Commc'ns of Cal.*, No. RIC 1205592 (Super. Ct. Riverside Cnty, Cal.). On August 30, 2013, White signed a "Confidential Settlement Agreement and Release" in full settlement of the civil action. White agreed to dismiss the suit and to release Defendant from

> any and all lawsuits, actions, causes of actions and claims, whether in law or equity, . . ., and whether known or unknown, suspected or unsuspected . . . , which [she may] now own or hold or have at any time before this date owned or held . . . including, but not limited to, any and all Claims: (1) which arose out of or are in any way connected with [her] employment with Defendant . . . or the cessation

and/or termination of the same; . . . and (iii) failure to pay wages, overtime pay, meals and rest breaks, waiting time penalties, severance pay, commissions, relocation expenses, bonuses, sick leave, holiday pay, vacation pay; . . . .

(Stmt. Material Facts, Ex. B [DE #206-3] at 4-5.)

Because "Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees . . . the FLSA's provisions are mandatory and are not subject to bargaining, waiver, or modification by contract or settlement" absent approval of a court of competent jurisdiction or the Secretary of Labor. *Robinson v. Harrison Transport. Servs.*, No. 5:15-CV-298-F, 2016 WL 3647616, at *1 (E.D.N.C. June 30, 2016). The Eleventh Circuit explained the reasoning behind the judicial prohibition of private FLSA settlements in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982):

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation. But to approve an "agreement" between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA.

*Lynn's Food Stores, Inc.* 679 F.2d at 1354.

While federal courts have historically refused to give effect to private settlements of FLSA rights, *see Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 462 (4th Cir. 2007), Defendant contends there has "been a string of cases that have upheld private settlements" in recent years. (Def.'s Mem. Supp. Partial Summ. J. at 13.) Citing *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th

17

Cir. 2012), and *Martinez v. Bohls Equip. Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005), Defendant argues that the release of a party's rights under the FLSA is enforceable where there is a bona fide dispute as to the amount of hours worked or the compensation due. (Def.'s Mem. Supp. Partial Summ. J. at 14.)

There has been no suggestion, however, that the Fourth Circuit has reversed course so as to permit private settlements of FLSA disputes. Even assuming the Fourth Circuit would permit the enforcement of private FLSA settlements or releases, summary judgment is nevertheless inappropriate in this circumstance. Based upon the record before this court, it is not clear whether Willoughby or White had asserted any rights under the FLSA or whether the agreements signed by them resolved any bona fide dispute as to the amount of hours worked or compensation due. As such, there exist genuine issues of material fact that preclude summary judgment as to their FLSA claims.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that Plaintiffs' Motion to Accept Late Opt-in Consents [DE #209] be GRANTED and Defendant's Motion for Partial Summary Judgment [DE #205] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 28, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 14th day of February 2017.

KIMBERLY A. SWANK
United States Magistrate Judge